OPINION
{¶ 1} Defendant-appellant, Richard Wayne Miller, appeals a decision of the Butler County Court of Common Pleas convicting him of aggravated murder and aggravated robbery and sentencing him to life in prison. Specifically, appellant raises issues of sufficiency of the evidence, manifest weight of the evidence, and third-party guilt. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} On March 27, 2002, the body of 33-year-old Paul Brown was discovered lying face down in Two Mile Creek behind an apartment complex in the city of Hamilton, Ohio. Brown had been stabbed 14 times and his throat had been deeply slit from ear to ear. His wallet was found some distance downstream, his front pants pockets had been turned out, and $7.07 was found in his rear pants pocket.
 {¶ 3} On May 26, 2004, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.01(B) with two robbery specifications pursuant to R.C. 2929.04(A)(3) and2929.04(A)(7), and one count of aggravated robbery in violation of R.C. 2911.01(A)(3). Appellant entered a plea of not guilty on all charges. On February 8, 2005, following a seven-day trial, the jury returned a guilty verdict on the aggravated murder and aggravated robbery charges, including one of the robbery specifications. Appellant was subsequently sentenced to life in prison without the possibility of parole. Upon timely appeal, appellant raises three assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A CONVICTION FOR AGGRAVATED MURDER AND FOR AGGRAVATED ROBBERY."
 {¶ 6} Appellant maintains that the evidence was not legally sufficient to convict him of aggravated murder or aggravated robbery. Claiming that the state provided absolutely no direct or circumstantial evidence that appellant was involved in Brown's murder, appellant insists that there is no nexus between himself and the victim.
 {¶ 7} The review of a claim that a conviction is not supported by sufficient evidence focuses upon whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. "[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 34, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781. (Emphasis omitted.)
 {¶ 8} A comprehensive review of the record reveals that there was sufficient evidence from which a reasonable mind could conclude beyond a reasonable doubt that appellant robbed and murdered Paul Brown. See Hancock at ¶ 34. Appellant insists that his admissions to police and acquaintances regarding robberies and assaults he committed did not enumerate Paul Brown as one of his targets. While appellant specifically denied committing Brown's murder when questioned by the authorities, the record demonstrates appellant's willingness to brag about his involvement in the murder when speaking to friends.
 {¶ 9} Numerous witnesses testified that appellant admitted to assaulting, robbing, and leaving a man for dead around the same time as the Brown murder. Jason Morris, a friend of appellant's, testified that appellant came to his house on an occasion in the spring of 2002 to play video games and drink beer. It was at this time that appellant broke down crying, telling Morris he had "done some bad shit." Appellant explained that he had severely beaten a man with the intention of robbing him and then left the victim for dead. Insisting that the victim was "a fag," appellant admitted that he had never beaten anyone that badly before. Another acquaintance of appellant's, Krista House, testified that while at Morris' residence on a separate occasion she heard appellant boast that he had beaten someone to death because the victim "was a faggot and only had five dollars." Les Gross, a friend as well, testified as to a similar admission wherein appellant said he beat up a man on the west side of Hamilton, took the victim's wallet which contained about $5, and then abandoned the victim. According to appellant the victim "ended up" dead, though appellant denied responsibility for the victim's death and expressed concern about being framed.
 {¶ 10} Additional evidence placed appellant at the scene of the murder. On the night of Saturday, March 23, 2002, Paul Brown left a family birthday party with two relatives. Brown was then dropped off at BW3's in Hamilton around 9:30 p.m. Video surveillance placed Brown at a nearby Meijer store where he withdrew $50 from an ATM at approximately 10:00 p.m. Brown's body was subsequently discovered in a nearby creek on Wednesday, March 27. Doctor James Swinehart, the forensic pathologist who performed Brown's autopsy, opined that Brown may have died anywhere from the late hours of Saturday, March 23 to Monday, March 25. However, after reviewing additional circumstantial evidence, Swinehart deduced that Brown probably died before Monday.
 {¶ 11} According to the testimony of Krista House, appellant indicated that the fatal beating of the "faggot with five dollars" happened in the woods by a creek. As stated, Brown's body was discovered in Two Mile Creek. During appellant's confession to Jason Morris, appellant stated that he had met the victim of his brutal assault at the Meijer store in Hamilton, and that the beating took place around this Meijer. Brown was last seen alive in the same Meijer, and his body was discovered in the vicinity of that store. Brittany Smith, a former girlfriend of appellant's, testified that appellant admitted to her that he had seriously beaten someone by Arby's, which is also in the same area as the murder, and that the victim of this beating had died. Finally, Jeffrey Burns, an inmate incarcerated with appellant at the Butler County Jail in 2004, testified that appellant described an incident where he intended to steal marijuana from a man walking by in the woods. Appellant referred to the victim of this theft as "a fag," and admitted to "sticking" (stabbing) him. The evidence reveals that Brown's body was discovered in the woods and that he had in his possession a bag of marijuana on the night he was last seen alive.
 {¶ 12} Appellant also directly implicated himself in the murder of Paul Brown. Nick Bertke, a friend of appellant's, testified about an occurrence where the subject of Brown's murder arose and appellant stated "I'd do it again, the faggot deserved it." On another occasion, appellant gestured toward a reward poster for the Brown murder and, according to friend Jason Morris, indicated that the man in the poster was the one he previously told Morris he had badly beaten and left for dead. Morris testified that, once at Morris' house immediately following the poster identification, appellant started crying and stated "I didn't mean to do it," referring to the Brown murder. Though the record does not clearly explain whether the witness was referring to the same set of events, Schon Lake testified that appellant pointed to a reward poster and stated "I killed that dude. That dude is a faggot, and he deserved to die." Another peculiar incident was relayed by Marc Holden, an inmate incarcerated with appellant at the Butler County Jail in 2003. Holden testified that he and appellant were watching a newscast about the Brown murder. When Detective James Cifuentes was questioned about public perceptions of the perpetrator during the newscast, the detective indicated that those who knew about the murder idolized rather than feared the perpetrator. According to Holden, appellant was awestruck and said out loud "they're not afraid of me, they idolize me."
 {¶ 13} Appellant's behavior and responses during police interviews further provide evidence of his guilt. Detective Cifuentes testified that appellant denied committing the murder. Yet, upon further questioning, appellant grew emotional and said "If I don't say something, it's all on me." Appellant later admitted that things were "all fuzzy" when Cifuentes asked appellant to describe what may have happened between he and Brown. After some thought, appellant then told Cifuentes he "wasn't convinced" he was at the murder scene. When Cifuentes asked if Brown had made sexual advances toward appellant, appellant responded "so he was gay?" and, according to Cifuentes, seemed pleased. Sergeant Mark Thomas testified that he asked appellant whether he could have committed the murder while in a drug or alcohol-induced haze. A habitual drug abuser, appellant responded that he "didn't think he did it" and later said he "didn't remember doing it."
 {¶ 14} Considering the voluminous evidence implicating appellant in the robbing and murder of Paul Brown, we find no merit in appellant's argument that his convictions were not supported by sufficient evidence. Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "THE CONVICTION OF DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 17} Appellant argues that the jury lost its way in convicting him. He condemns the conviction due to an alleged lack of direct, circumstantial, and scientific evidence. Appellant claims that the finding of guilt was based upon the bare inference that Brown was the victim of an assault and robbery that appellant admitted to committing around the same time frame as the murder.
 {¶ 18} To determine whether a conviction is against the manifest weight of the evidence, an appellate court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Hancock,2006-Ohio-160 at ¶ 39. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins,78 Ohio St.3d at 387.
 {¶ 19} After reviewing the record, we conclude that the jury did not lose its way when it convicted appellant of aggravated murder and aggravated robbery. The evidence of appellant's guilt, both direct and circumstantial, was competent, credible and substantial. See State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325, ¶ 55. See, also, State v. Simms,165 Ohio App.3d 104, 2005-Ohio-5753, ¶ 19-20, motion to certify allowed byAm. Interstate Ins. Co. v. G H Serv. Ctr., Inc.,108 Ohio St3d 1470, 2006-Ohio-665. A number of witnesses testified as to appellant's assault and robbery of a man under circumstances which established a connection between appellant and Brown. Credible circumstantial evidence, including the Meijer surveillance video and the forensic pathologist's calculations, provided additional support. This collective evidence placed appellant in proximity to the murder scene around the time of Brown's murder. In addition, appellant directly and repeatedly indicated to friends that he was involved in Brown's death. Finally, appellant's responses and behavior during police interviews further supported his guilt.
 {¶ 20} An appellate court reviewing the evidence on a manifest weight claim must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The jury in the case at bar chose to accept and allocate significant weight to the evidence supporting appellant's guilt. Considering the credibility and strength of the direct and circumstantial evidence in favor of appellant's convictions, this situation falls short of "the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387. Appellant's second assignment of error is overruled.
 {¶ 21} Assignment of Error No. 3: {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT REFUSED TO ALLOW HIM TO PRESENT EVIDENCE THAT ANOTHER PERSON MAY HAVE COMMITTED THE MURDER OF PAUL BROWN."
 {¶ 23} Appellant insists that the trial court violated his constitutional rights when it prevented him from presenting evidence of a potential third-party perpetrator. In particular, appellant challenges the court's application of the balancing test in Evid.R. 403(A) to exclude his proffered third-party culpability evidence. Appellant argues that his constitutional rights of compulsory process, due process, and the right to present a defense were compromised by the exclusion of this crucial evidence.
 {¶ 24} A trial court's decision to admit or exclude evidence will not be reversed absent an abuse of discretion. Hancock,2006-Ohio-160 at ¶ 122. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Id. at ¶ 130.
 {¶ 25} Every criminal defendant has a constitutional right to present a meaningful defense.[1] Crane v. Kentucky
(1986), 476 U.S. 683, 690, 106 S.Ct. 2142. However, this right does not engender an unfettered entitlement to the admission of any and all evidence. U.S. v. Scheffer (1998), 523 U.S. 303,308, 118 S.Ct. 1261. State rules of evidence place limitations upon what evidence may be admitted at a criminal trial. See id. It is true that a state court must not interpret its evidence rules in such a way as to deny a defendant the opportunity to present a defense. See, generally, Chambers v. Mississippi
(1973), 410 U.S. 284, 93 S.Ct. 1038. However, no violation is established where such evidentiary rules are not "arbitrary" or "disproportionate to the purposes they are designed to serve."Scheffer at 308, citing Rock v. Arkansas (1987), 483 U.S. 44,56, 107 S.Ct. 2704.
 {¶ 26} Appellant sought to introduce evidence that a man by the name of Scottie Guenther murdered Paul Brown. The court allowed appellant to present Tammy Holcomb, Guenther's ex-girlfriend, as a witness to support this theory, but ultimately determined that the evidence was not relevant. As revealed during a sidebar conference, the judge reasoned that evidence relating to Guenther's motive and drug addition was "true with probably 1,000 people in Hamilton" and, without more, failed to reveal Guenther as a viable perpetrator of the Brown murder. The court failed to decipher a link between Guenther's last known whereabouts on March 23 and the murder scene because the two locales were on opposite ends of the city of Hamilton. Emphasizing that a nexus had to be presented in order for this third-party evidence to be admitted, the court referred to the defense's arguments as guess and speculation. The court thus deemed the evidence irrelevant, struck Holcomb's testimony, and sustained the state's objections thereto.
 {¶ 27} The trial judge also permitted the defense to proffer testimony outside the presence of the jury. The defense re-examined lead investigating officer Detective Cifuentes regarding witness statements that allegedly implicated Guenther in the murder. However, at the conclusion of this proffer, the court remained steadfast in its determination that the defense failed to establish any nexus between Guenther and Brown. The court declined to admit the evidence relating to Guenther merely because the police investigated him as a suspect:
 {¶ 28} "The fact that there were other suspects in this murder and that [an] investigation was conducted by the police department * * * [which] satisfied that there was no evidence linking Guenthner [sic] to the murder of Paul Brown does not mean that all of that evidence, which they accumulated, all of a sudden becomes admissible."
 {¶ 29} The court went on to note the likelihood that a number of crimes were perpetrated in the city of Hamilton on the night in question, stating that the fact that a few witnesses offer nebulous comments about Guenther's purported involvement in a crime in Hamilton that evening does not prove him to be the perpetrator of the Brown murder. The evidence proffered by the defense amounted to "chit-chat innuendo," largely recanted by those making the statements. Even if minimally relevant, the court determined that the evidence warranted exclusion on the basis of Evid.R. 403(A) because the probative value was substantially outweighed by the danger of confusion of the issues or misleading the jury.
 {¶ 30} The exclusion of the evidence in question based upon considerations of relevance and confusion did not constitute a misapplication of the rules of evidence or a violation of appellant's constitutional rights. "The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury." Renfro v. Black (1990),52 Ohio St.3d 27, 31. The trial court allowed the defense to attempt to forge a connection between Guenther and Brown by presenting arguments and proffering evidence. After due consideration, the court did not find any nexus between Guenther and Brown's murder, the murder scene, or Brown himself. We conclude that the court did not abuse its discretion in finding the third-party perpetrator evidence, at most, minimally relevant and in excluding such evidence on the basis of Evid.R. 403(A).
 {¶ 31} Furthermore, this case is readily distinguishable from a recent United States Supreme Court decision referred to by appellant to support admission of the Guenther evidence. InHolmes v. South Carolina (2006), ___ U.S. ___, 126 S.Ct. 1727, the Court ruled that the trial court erred in excluding third-party guilt evidence. Holmes was convicted of murder, first-degree criminal sexual conduct, first-degree burglary, and robbery after 86-year-old Mary Stewart died from complications resulting from a brutal attack in her home. Holmes was convicted and sentenced to death, but a new trial was granted on state postconviction review. At the second trial, the prosecution relied heavily upon forensic evidence including a palm print, clothing fibers, and DNA. Insisting that the evidence was contaminated and that he was being framed, Holmes sought to introduce evidence that another man committed the crime. The trial court found the evidence inadmissible due to its speculative nature. The South Carolina Supreme Court affirmed, holding that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence." State v. Holmes (2004), 361 S.C. 333, 342-343,605 S.E.2d 19, 24.
 {¶ 32} On appeal, the United States Supreme Court reversed. The Court determined that the exclusion of the third-party perpetrator evidence violated Holmes' federal constitutional rights where such evidence was excluded due to the existence of strong forensic evidence in favor of the Holmes' guilt. Holmes,126 S.Ct. at 1735. The Court reasoned that such an approach inappropriately focused on the prosecution's case: "The point is that, by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." Id.
 {¶ 33} The present matter markedly differs from the Holmes
case. Appellant's conviction was based upon circumstantial rather than forensic evidence. Unlike the restrictive dismissal of the third-party perpetrator evidence by the South Carolina courts, the trial court in the case at bar did not focus entirely on the prosecution or arbitrarily exclude the Guenther evidence. The court afforded appellant ample opportunity to present and proffer evidence in order to establish a nexus between the victim and Guenther. After consideration, the court did not justify exclusion of the Guenther evidence by referring to the strength of the prosecution's case. Instead, the court found the evidence to be inadmissible because absolutely no nexus existed between the proffered evidence and the Brown murder. Clearly, the court did not restrictively employ an evidentiary rule categorically excluding third-party guilt evidence as occurred in Holmes.
 {¶ 34} Because we find no abuse of discretion in the trial court's exclusion of the third-party perpetrator evidence on the bases of irrelevance and Evid.R. 403(A), appellant's third assignment of error is overruled.
 {¶ 35} Judgment affirmed.
Walsh, P.J., and Young, J., concur.
[1] Admittedly, the issue of when the exclusion of third-party perpetrator evidence deprives a defendant of his or her constitutional right to present a defense has not been extensively explored by Ohio courts. See, e.g., State v. Waulk,
Ross App. No. 02CA2649, 2003-Ohio-11 (exclusion of third party's alleged confession did not violate defendant's right to present a defense); State v. Schuler, Pickaway App. No. 02CA7, 2002-Ohio-6607 (exclusion of third party's prior theft conviction in defendant's theft prosecution did not deny defendant his right to present a defense).